UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEORGE KATSIAFICAS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-11058-ADB |
| | * | |
| UNITED STATES CENTRAL | * | |
| INTELLIGENCE AGENCY, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

## I. INTRODUCTION

Plaintiff George Katsiaficas ("Plaintiff") sued the United States Central Intelligence Agency (the "CIA" or "Defendant") to compel disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of CIA documents pertinent to the 1961 South Korean coup d'état and the 1979 assassination of former-South Korean President Park Chung-hee. [ECF No. 1]. Presently pending before this Court are Plaintiff's Motion for Summary Judgment [ECF No. 53] and Defendant's Cross Motion for Summary Judgment [ECF No. 69]. For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## II. PROCEDURAL BACKGROUND

On April 29, 2013, Plaintiff, a professor at Wentworth Institute of Technology, filed a complaint against Defendant in this Court. [ECF No. 1]. On January 1, 2014, Plaintiff filed a Motion for Summary Judgment. [ECF No. 17]. On February 28, 2014, Defendant filed a Cross Motion for Summary Judgment. [ECF No. 26]. On March 21, 2016, the Court entered electronic

orders denying both motions as moot, and setting a schedule for both parties to file renewed motions. [ECF Nos. 51–52].

On April 18, 2016, Plaintiff filed a Renewed Motion for Summary Judgment. [ECF No. 53]. Plaintiff's Renewed Motion for Summary Judgment lacks a clearly identifiable "statement of the material facts of the record as to which the moving party contends there is no genuine issue to be tried," as required under Local Rule, D. Mass 56.1 ("LR 56.1"), but does include a general "Facts" section. [ECF No. 53]. On October 4, 2016, Defendant filed a Cross Motion for Summary Judgment [ECF No. 69] and a Memorandum in Support that also contains an Opposition to Plaintiff's Renewed Motion for Summary Judgment [ECF No. 70]. Defendant's Memorandum includes a Statement of Undisputed Material Facts, none of which appear to contradict the general facts alleged by Plaintiff.[1] Id.; see also [ECF No. 53]. Defendant also relies on two declarations: the Declarations of Antoinette B. Shiner [ECF No. 71] and of Chief Martha M. Lutz [ECF No. 28]. Finally, Defendant submitted Vaughn indices for both the Coup Request [ECF No. 72] and the Assassination Request [ECF No. 73].[2]

---

[1] In a footnote to its Statement of Undisputed Material Facts section, the CIA states that it was unclear whether the "Facts" section of Plaintiff's Renewed Motion for Summary Judgment [ECF No. 53] was a statement of undisputed, material facts as required under LR 56.1. [ECF No. 70]. Generally, district courts "enjoy broad latitude in administering and enforcing local rules." S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., No. CV 12-11663-GAO, 2016 WL 696085, at *27 (D. Mass. Feb. 19, 2016), report and recommendation adopted, 183 F. Supp. 3d 197 (D. Mass. Apr. 28, 2016) (internal quotation and citations omitted). Here, the Court chooses not to engage with the issue of the adequacy of Plaintiff's factual statement under LR 56.1, as Defendant's Cross Motion for Summary Judgment appears not to dispute any of Plaintiff's general factual claims. Therefore, the Court will treat the "Facts" section of Plaintiff's Motion for Summary Judgment [ECF No. 53], so far as it asserts factual claims and not the Plaintiff's personal opinions on the adequacy of the CIA process, as a statement of undisputed, material facts sufficient to satisfy LR 56.1.

[2] "A Vaughn index correlates information that an agency decides to withhold with the particular FOIA exemption or exemptions, explaining the agency's justification for nondisclosure." Maynard v. C.I.A., 986 F.2d 547, 556 (1st Cir. 1993).

### III.    FACTUAL BACKGROUND

Except as otherwise noted, the following facts are taken from the Statement of Undisputed Material Facts contained in Defendant's Motion for Summary Judgment [ECF Nos. 69–70]. Because Plaintiff did not file an opposition to Defendant's pending Motion for Summary Judgment, the Court considers the facts contained therein to be admitted by Plaintiff. See Zimmerman v. Puccio, 613 F.3d 60, 63 (1st Cir. 2010) (noting that where a party opposing summary judgment fails to file an opposition including a "concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried," material facts asserted by the moving party "will be deemed for purposes of the motion to be admitted by opposing parties").

By letter dated March 4, 2010, Plaintiff submitted two separate FOIA requests to the CIA. The first request (the "Coup Request") asked for "records related [to], describing, and/or concerning the coup d'état of May 16, 1961 in South Korea through which General Park Chung-hee seized power," and specifically requested CIA communications with United States Army officer James Hausman and the CIA, the Defense Intelligence Agency (DIA), and other government documents related to Park Chung-hee's meetings with United States government personnel. The second request (the "Assassination Request") asked for "records related [to], describing, and/or concerning the assassination of the South Korean President Park Chung-hee on October 26, 1979 in Seoul, South Korea." The request included all CIA, DIA, and other government documents "related to the assassination, to his assassin (Korean Central Agency chairman Kim Jae-kyu), to [United States] persons' meetings with both [individuals] named above, and to any other materials referring to President Park's assassination."

On March 29, 2011, the CIA responded to Plaintiff's Coup Request by producing documents totaling 29 pages.[3] Katsiaficas appealed this production as insufficient. On February 19, 2014, the CIA's Agency Release Panel ("ARP") denied Plaintiff's appeal, stating that the previously-withheld information was properly protected under FOIA exemptions (b)(1) and (b)(3).

On July 20, 2012, the CIA mailed Plaintiff its final response to the Assassination Request. The CIA's letter referenced an April 2010[4] phone call during which Plaintiff agreed to limit the scope of his request to CIA documents. The CIA's final response consisted of ten pages containing four documents, which were released with "deletions made on the basis of FOIA exemptions (b)(1) and (b)(3)." The CIA's response letter also noted that additional documents had been withheld in their entirety under these exemptions.

On April 30, 2013, before having exhausted the CIA's appeals process with respect to his Assassination Request, Plaintiff filed this lawsuit.[5] On May 19, 2014, Plaintiff and Defendant agreed to stay this Court's proceedings until Plaintiff had completed the CIA appeals process while Plaintiff appealed the CIA's response to his Assassination Request. On September 29, 2015, the ARP issued a final response to Plaintiff's administrative appeal. This response included additional information from the four partially-redacted documents that Plaintiff received on July 20, 2012.

---

[3] The facts in this paragraph are drawn from the "Facts" section of Plaintiff's Motion for Summary Judgment and from supporting exhibits. [ECF Nos. 53, 53-5]. The CIA does not dispute these facts in its Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 70], and they are therefore considered admitted. See LR 56.1.

[4] The letter states that this phone call took place in 2012. The CIA, however, asserts that the 2012 date was a clerical error and that all other documents confirm that the call took place on April 22, 2010.

[5] Plaintiff explains that he filed suit in April 2013 because he mistakenly believed at that time that the CIA's response to his Assassination Request was a response to his appeal of the Coup Request, and that it related to both requests. [ECF No. 53].

Subsequent to the productions detailed above, the CIA conducted another review of its records and released additional, previously-redacted information relevant to Plaintiff's requests. As of today, the CIA has released 15 documents[6] in response to Plaintiff's Coup Request (with no documents withheld in full) and 14 documents in response to Plaintiff's Assassination Request (with 16 documents withheld in full). Plaintiff, who has now exhausted the CIA's internal appeals process, continues to challenge the adequacy of the CIA's searches and the completeness of its productions.

## IV. LEGAL STANDARD

### A. Summary Judgment Generally

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is considered "genuine" when "the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A fact is considered "material" when "its existence or nonexistence has the potential to change the outcome of the suit." Id. at 5 (citing Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the Court] to specific evidence in the record that would be admissible at trial." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must

---

[6] While the CIA's Motion for Summary Judgment [ECF No. 70] states that the CIA has released 15 documents in response to Plaintiff's Coup Request, the Declaration of CIA Information Review Officer Antoinette Shiner, cited by the CIA, states that the CIA has released 16 documents in response to the Coup Request [ECF No. 71 ¶ 23]. The Vaughn index relevant to the Coup Request production lists 15 documents. [ECF No. 72].

'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (citing Carmona v. Toledo, 215 F.3d 124, 135 (1st Cir. 2000)). Once the moving party has laid out its basis for summary judgment, the burden shifts to the party opposing summary judgment to demonstrate, "with respect to each issue on which she would bear the burden of proof at trial, . . . that a trier of fact could reasonably resolve that issue in her favor." Borges, 605 F.3d at 5.

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment." Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003). Where inferences are to be drawn from the stated facts, those inferences "must be viewed in the light most favorable to the party opposing the motion." Oleskey, 658 F. Supp. 2d at 294 (citing Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)). The Court, however, "safely may ignore conclusory allegations, improbable inferences, and unsupported speculation." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (internal quotation and citation omitted).

When a court faces cross motions for summary judgment, it applies the above analysis, unaltered, "to each motion in turn." Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D.N.H. 2003) (citing Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)); see also Cochran, 328 F.3d at 6 ("This framework is not altered by the presence of cross-motions for summary judgment.").

### B. Summary Judgment in the FOIA Context

"In a summary judgment context, the burden rests with the agency subject to a FOIA request to establish that it has 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). The inquiry is "not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'" Maynard, 986 F.2d at 559 (citing Safecard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991); see also Sephton v. F.B.I, 442 F.3d 27, 29 (1st Cir. 2006) ("FOIA requires a reasonable search, not an exhaustive one" (internal quotation and citation omitted)). Moreover, the government bears the burden of proving that any withheld information is exempt under FOIA. Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 438 (1st Cir. 2006).

## V. DISCUSSION

Defendant argues that it conducted an adequate, reasonable search based on Plaintiff's requests, and that it properly withheld information pursuant to applicable FOIA exemptions. Plaintiff argues that the search was deficient based on the inconceivably limited number of documents produced, that the description of the CIA's search detailed in a letter to him was vague, and that any exemptions are inapplicable here.

### A. CIA's Motion for Summary Judgment

#### i. Adequacy of the CIA's Search for Documents

An agency is permitted to rely upon affidavits to establish that its search was adequate, provided that these affidavits are "relatively detailed and nonconclusory, and are submitted by

7

responsible agency officials in good faith." Maynard, 986 F.2d at 559. A sufficiently detailed affidavit must at least "describe in reasonable detail the scope and method by which the search was conducted." Id. If an agency is able to demonstrate by affidavit that its search was "reasonably thorough," the burden shifts to the plaintiff to show that this search was not conducted in good faith. Id. at 560. Agency affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Id. (internal quotations and citations omitted).

To establish the adequacy of its searches, the CIA has submitted the declarations of CIA Litigation Information Review Office[7] Chief Martha M. Lutz [ECF No. 28 ("Lutz Affidavit")] and CIA Information Review Officer Antoinette Shiner [ECF No. 71 ("Shiner Affidavit")]. The Lutz Affidavit focuses on the Coup Request, while the Shiner Affidavit focuses on the Assassination Request. These affidavits, outlined in relevant part in the CIA's Motion for Summary Judgment [ECF Nos. 69–70], describe the "scope" and "method" of the CIA searches in sufficient detail to satisfy the agency's burden of demonstrating a good faith search effort. Maynard, 986 F.2d at 559.

Specifically, the Lutz Affidavit outlines the CIA's general search procedures (after a request is received by Information Management Services ("IMS"), it is reviewed by IMS professionals and tasked to the relevant directorates), then explains more specifically how these procedures were followed relative to Plaintiff's Coup Request. Lutz Affidavit ¶ 27. In relevant part, the CIA reviewed Plaintiff's Coup Request and tasked the Directorate of Intelligence ("DI") with searching the relevant record systems using "broad search terms designed to locate all responsive documents created between 1 January 1961 and 1 January 1962." Id. ¶ 28. The Lutz

---

[7] The Litigation Review Office was previously known as the "Litigation Support Unit."

Affidavit details the specific search terms used, as well as the various phases of discovery, redaction, and release. Id. ¶¶ 28–29. It also explains that when Plaintiff appealed the CIA's response, the DI requested that the National Clandestine Service ("NCS"), another CIA directorate, be tasked with the Coup Request search to "ensure that all responsive records had been located." Id. ¶ 30. The NCS searched for various common spellings of Park Chung-hee's name, and did not limit its search to a specific time period. Id. This search turned up four records, two of which were judged non-responsive and two of which had been previously released. Id. Lutz stated that at the time of her declaration, the CIA had released eleven documents pertinent to the Coup Request, two of which had been released for a second time pursuant to Plaintiff's appeal. Id. ¶ 31. The Coup Request documents have been re-reviewed since the time of Lutz's declarations, and additional portions of previously-denied records were released to Plaintiff on August 23, 2016. Shiner Affidavit ¶ 23.

The Shiner Affidavit details the CIA's search process as applied to the Assassination Request. With regard to this request, the CIA tasked the Directorate of Analysis ("DA") and the Directorate of Operations ("DO") with searching for responsive documents. Id. ¶ 24. These directorates were chosen because "the DA houses the Agency's finished analytical products and the DO has certain intelligence reporting" and is responsible for "the clandestine collection of foreign intelligence." Id. Both directorates used "broad search terms" described in the Shiner Affidavit to find responsive documents created between October 20, 1979 and December 31, 1980. Id. In June of 2016, the CIA searched two additional databases—one containing documents previously reviewed and processed for release under FOIA, the Privacy Act, and other release programs, and one containing a listing of records retired to the CIA archives—to find responsive records created between January 1, 1977 and December 31, 1980. Id. ¶¶ 25–26.

9

These searches revealed an additional ten documents responsive to the Assassination Request, and four of them were withheld in their entirety pursuant to FOIA exemptions (b)(1) and (b)(3). Id. ¶ 27. All told, the CIA released fourteen documents in part and withheld sixteen documents in full.

The Lutz and Shiner Affidavits sufficiently establish that the CIA conducted a search "reasonably calculated to discover the requested documents." Maynard, 986 F.2d at 559 (internal quotation and citation omitted). Thus, Plaintiff can rebut the CIA affidavits "only by showing that the agency's search was not made in good faith." Moffat v. U.S. Dep't of Just., 716 F.3d 244, 254 (1st Cir. 2013) (citing Maynard, 986 F.2d at 560)). To support his claim that the CIA's response was inadequate, Plaintiff states that "[c]onsidering the extent of CIA involvement in South Korea during the time of Park Chung-hee's ascension to power and his assassination . . . [Plaintiff] does not believe that it is possible that the results are only such a small number of pages, and those pages only summaries of such a general nature." [ECF No. 53]. This claim, though it cites to the long history of South Korea's relationship with the United States, is merely speculative with regard to discoverable documents in the CIA's possession. Therefore, it is insufficient to rebut the presumption of good faith on the part of the CIA. Maynard, 986 F.2d at 560 (presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents" (internal citations and quotations omitted)). Because Defendant has presented sufficiently-detailed affidavits establishing the reasonableness of its searches and Plaintiff has failed to present evidence of bad faith on the part of the CIA, summary judgment is proper on the issue of the adequacy of the searches.

ii.     Information Withheld Under FOIA Exemptions (b)(1) and (3)[8]

FOIA was enacted to promote a well-informed American citizenry by "[exposing] the operations of federal agencies 'to the light of public scrutiny.'" Carpenter, 470 F.3d at 437 (first citing Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976), then citing Providence J. Co. v. U.S. Dep't of the Army, 981 F.2d 552, 556 (1st Cir. 1992)). In order to support the dissemination of information to the public while protecting the government's efficient administration, FOIA includes nine exemptions for materials excused from the "general requirements of disclosure." Id. at 438 (internal citations omitted). These exemptions "are to be construed narrowly, with any doubts resolved in favor of disclosure." Id. (internal citations omitted). "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions." Id. (internal citations omitted). "The government's burden is a light one," however, because "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." N.Y. Times Co. v. U.S. Dep't of Just., No. 14 Civ. 03776 (AT)(SN), 2016 WL 5946711, at *5 (S.D.N.Y. Aug. 18, 2016) (internal quotations and citations omitted).

---

[8] Defendant argues that because Plaintiff's Complaint [ECF No. 1] did not contest the appropriateness of the CIA's stated exemptions and instead focused solely on the adequacy of the CIA's search, the Court may not engage with Plaintiff's exemption-based arguments now [ECF No. 70]. In support of this position, Defendant cites cases noting that a plaintiff is not permitted to amend his or her complaint to include new claims at the summary judgment stage. See, e.g., Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004); Bell v. City of Philadelphia, 275 Fed. App'x 157, 160 (3d Cir. 2008). Here, however, Plaintiff's argument about the FOIA exemptions appears not to be a new claim, but instead a response to the CIA's third affirmative defense: that "documents are protected from disclosure by various exemptions to the FOIA." [ECF No. 7]. Furthermore, the Plaintiff's exemption-based argument arguably falls within his *existing* claim that "[t]here is no legal basis for Defendants' refusal to disclose the records sought." [ECF No. 1]. Therefore, Plaintiff's argument about the appropriateness of the FOIA exemptions does not present an impermissible new claim.

11

### a. *FOIA Exemption (b)(1)*

FOIA Exemption (b)(1) states that the FOIA requirements do not apply to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the CIA asserts that certain documents have been properly withheld under Executive Order 13526, which states that information may be classified under the Order when:

> (1) An original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more categories listed in section 1.4 of this order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("Executive Order 13526").

"Courts . . . accord substantial deference to the CIA's determination that information must be withheld under Exemption 1, and will uphold the agency's decision so long as the withheld information logically falls into the category of the exemption indicated, and there is no evidence of bad faith on the part of the agency." Maynard, 986 F.2d at 555–56 (internal quotations and citations omitted). Because the first two conditions of Executive Order 13526—that an original classifying authority (here, the CIA) is classifying the information and that the information is owned by, produced by or for, or is under the control of the government—are undisputed here, the Court proceeds to a discussion of the third and fourth conditions.

The third condition refers to Section 1.4 of Executive Order 13526, which states that information "shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security" and

it pertains to one or more of seven enumerated categories. Exec. Order No. 13526, 75 Fed. Reg. 708. In relevant part, these categories include "(c) intelligence activities (including covert action), intelligence sources or methods, or cryptology" and "(d) foreign relations or foreign activities of the United States, including confidential sources." Id. The CIA claims, and the Court agrees, that the information withheld here logically falls into the classification categories of intelligence activities, intelligence sources and methods, and foreign relations or foreign activities of the United States. [ECF No. 70]; Shiner Affidavit ¶ 29. Specifically, the CIA argues that the information contained in withheld documents would "reveal the depth and breadth of the CIA's specific intelligence capabilities, authorities, interests, and resources." [ECF No. 70].

Plaintiff does not address the CIA's specific assertion that the withheld information falls under categories (c) and (d) of Section 1.4 of Executive Order 13526.[9] Instead, Plaintiff states that "considering the length of time which has passed since the events which are the subject of this FOIA request and that they happened in a friendly country[,] it is hard to understand what national defense or foreign policy could be implicated." [ECF No. 53]. Plaintiff therefore appears to dispute whether the CIA's withheld information "could reasonably be expected to cause identifiable or describable damage to the national security," as required under Section 1.4. The CIA adequately addresses both Plaintiff's argument about South Korea's status as a friendly nation and about the passage of time.

With regard to the positive relationship between the United States and South Korea, the CIA states that *maintaining* a friendly relationship is crucial, and that revealing information

---

[9] At the time that Plaintiff filed his Motion for Summary Judgment [ECF No. 53], he was not aware of the specific Executive Order cited by the CIA as grounds for its decision to withhold documents under 5 U.S.C. § 552(b)(1). The CIA identified Executive Order 13526 in its Motion for Summary Judgment [ECF Nos. 69–70], but Plaintiff never filed a response or opposition to that motion. Therefore, the Court must proceed based only on Plaintiff's broad claims about 5 U.S.C. § 552(b)(1).

about United States "intelligence activities, sources, and methods" could have an adverse effect on relations with a key ally in Asia [ECF No. 70]; Shiner Affidavit ¶¶ 33–34. Furthermore, even when a friendly nation is involved, revealing confidential sources' identities could expose aspects of the CIA's recruitment process, negatively impact sources and their families, and hurt the CIA's ability to recruit future confidential sources. [ECF No. 70]; Shiner Affidavit ¶ 35. Finally, according to the CIA, responding to all FOIA requests for information about events in friendly countries could reveal the CIA's resources, interests, activities, and priorities "piece by piece," further endangering national security and foreign relations. [ECF No. 70]; Shiner Affidavit ¶¶ 35–38. Therefore, the CIA asserts, disclosing currently withheld information "could reasonably be expected to cause damage to U.S. national security and current foreign relations" despite the fact that the United States and South Korea are allies. [ECF No. 70].

As to the passage of time, Executive Order 13526 provides for the automatic declassification of historically significant[10] records that were created over 25 and 50 years ago, unless certain conditions are met. In relevant part, Section 3.3(b)(1) of Executive Order 13526 exempts from automatic declassification 25-year-old documents "the release of which should clearly and demonstrably be expected to . . . reveal the identity of a confidential human source, a human intelligence source, a relationship with an intelligence or security service of a foreign government or international organization . . . or impair the effectiveness of an intelligence method currently in use, available for use, or under development." Exec. Order No. 13526, 75 Fed. Reg. at 714–15. Furthermore, Section 3.3(b)(6) of Executive Order 13526 exempts from automatic declassification 25-year-old documents containing "information, including foreign

---

[10] To be automatically declassified under Section 3.3 of Executive Order 13526, records must have "permanent historical value." Exec. Order No. 13526, 75 Fed. Reg. at 714. The CIA does not appear to dispute the historical value of the information in question, and instead relies on exceptions to automatic declassification under Section 3.3.

government information, that would cause serious harm to relations between the United States and a foreign government." Id. at 715. Under Section 3.3(h) of Executive Order 13526, documents over 50 years old are exempted from release if they reveal "the identity of a confidential human source or a human intelligence source" or "key designs of weapons of mass destruction." Id. at 716–17.

Here, the CIA located 30 responsive documents that were over 25 years old, and 15 responsive documents that were over 50 years old. The CIA determined that the information in these records was properly withheld under FOIA exemption (b)(1) because it relates to "CIA intelligence methods still in use, would reveal a confidential human source[,] or would reveal foreign government information that would impair the U.S. foreign relations with another country." [ECF No. 70]; Shiner Affidavit ¶ 32.

The fourth classification condition under Executive Order 13526 is that the "unauthorized disclosure of the information reasonably could be expected to result in damage to the national security . . . and the original classification authority is able to identify or describe the damage." Exec. Order No. 13526, 75 Fed. Reg. at 707. Because this condition mirrors the Section 1.4 requirement that the information could "reasonably be expected to cause identifiable or describable damage to the national security," further discussion of this condition is unnecessary here. Id.

As described above, the information withheld by the CIA "logically falls into the category" of Exemption (b)(1) as it relates to Executive Order 13526. Maynard, 986 F.2d at 555–56. Furthermore, Plaintiff has failed to provide non-speculative evidence of bad faith on the part of Defendant. Id. Therefore, the Court defers to the CIA's judgment and accepts that the information has been properly withheld. Id.

### b. *FOIA Exemption (b)(3)*

FOIA Exemption (b)(3) states that the FOIA requirements do not apply to matters that are "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3). Here, the CIA relies on Section 102A of the National Security Act of 1947, 50 U.S.C. § 3024 ("National Security Act") and on Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 ("CIA Act"). The National Security Act, in relevant part, states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Relatedly, the CIA Act exempts the CIA from "law[s] which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507.

"Courts evaluating Exemption 3 claims must accord the same substantial weight to the agency's judgment as with Exemption 1 claims." Nat'l Sec. Archive Fund, Inc. v. C.I.A., 402 F. Supp. 2d 211, 216–17 (D.D.C. 2005) (first citing C.I.A. v. Sims, 471 U.S. 159, 179 (1985) ("The decisions of the Director, who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake"); then citing Gardels v. C.I.A., 689 F.2d 1100, 1104–05 (D.C. Cir. 1982); and then citing Phillippi v. C.I.A., 655 F.2d 1325, 1332 (D.C Cir. 1981)); see also Church of Scientology Int'l, 30 F.3d at 235 ("agency decisions to withhold materials under Exemption 3 are entitled to some deference"); Sims, 371 U.S. at 180 ("it is the responsibility of the Director of

Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process"). For Exemption (b)(3) to apply, the invoked statute must constitute "a statutory exemption to disclosure within the meaning of Exemption 3" and the requested information must be "included within" the statute's "protection." Maynard, 986 F.2d at 554 (quoting Sims, 471 U.S. at 167). "[O]nce a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA *de novo* review normally ends." Aronson v. I.R.S., 973 F.2d 962, 967 (1st Cir. 1992).

Both the National Security Act and the CIA Act qualify as Exemption (b)(3) statutes. See Shiner Affidavit ¶¶ 40, 41; Berman v. C.I.A., 501 F.3d 1136, 1137–38, 1140 (9th Cir. 2007) (holding that 50 U.S.C. § 403-1, the previous codification of Section 102A of the National Security Act, and 50 U.S.C. § 403g, the previous codification of Section 6 of the CIA Act, fall under FOIA Exemption (b)(3)); Maynard, 986 F.2d at 554 (noting that National Security Act is an Exemption (b)(3) statute). Thus, the next inquiry is whether Plaintiff's requested information "at least arguably" falls under these statutes. Aronson, 973 F.2d at 967. With regard to the National Security Act, the CIA states that "[r]evelation of the withheld information would disclose the CIA's intelligence sources and methods, which the National Security Act is designed to protect." [ECF No. 70]; Shiner Affidavit ¶ 42. With regard to the CIA Act, the CIA states that it is exempt from disclosures concerning the CIA's "core function: intelligence collection through its intelligence sources and methods." [ECF No. 70]; see also Shiner Affidavit ¶ 41. Based on these arguments, Plaintiff's requested information "at least arguably" falls under the

National Security Act and the CIA Act, and Exemption (b)(3) therefore permits the information to be withheld. Aronson, 973 F.2d at 967.

Plaintiff argues that Exemption (b)(3) should not apply because then-relevant information about CIA methods, employees, and sources can no longer be considered pertinent or harmful given the significant amount of time that has elapsed since the relevant events. [ECF No. 53]. This argument is analogous to Plaintiff's time-related claims against the application of Exemption (b)(1). The discussion above, concerning the potential impact on national security despite the passage of time that could result from disclosure, therefore applies here. Furthermore, "[c]ourts have generally rejected the contention that the mere age of intelligence information rules out Exemption 3." Maynard, 986 F.2d at 555 n.6 (stating that the fact that information was 30 years old did not mean it could not harmfully reveal intelligence sources or methods). Plaintiff therefore is unable to establish that the requested information does not, "at least arguably," fall under Exemption (b)(3).

Because the CIA adequately searched for responsive documents and properly withheld certain documents under FOIA Exemptions 1 and 3, the CIA's Motion for Summary Judgment [ECF No. 69] is <u>GRANTED</u>.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff claims that he is entitled to summary judgment because the CIA unlawfully withheld documents and impermissibly applied FOIA Exemptions 1 and 3. [ECF No. 53]. "'[S]ummary judgment in favor of the FOIA plaintiff' is appropriate '[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption,' but should be denied if the agency satisfies its burden 'to show that requested

material falls within a FOIA exemption.'" N.Y. Times Co., 499 F. Supp. 2d at 509 ((quoting Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

Based on the discussion above, as supported by the Lutz and Shiner Affidavits, Plaintiff has failed to show that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. Furthermore, Plaintiff's assertions are made up in large part of "conclusory allegations" and "unsupported speculation" based solely on the United States government's long-term involvement in South Korea. Cochran, 328 F.3d at 6. The Court is permitted to disregard such assertions at the summary judgment phase. Id. Therefore, Plaintiff's Motion for Summary Judgment [ECF No. 53] is DENIED.

## VI. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [ECF No. 69] is GRANTED and Plaintiff's Motion for Summary Judgment [ECF No. 53] is DENIED.

**SO ORDERED.**

Dated: May 17, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE